UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** § <br> §<br>PETITIONER, §<br> §<br>v. §<br> §<br>**APPROXIMATLEY $25,000 IN CASH SEIZED FROM A SEARCH WARRANT EXECUTED FOR A UPS PARCEL PACKAGE; and** §<br> §<br>**APPROXIMATLEY $15,000 IN CASH SEIZED FROM A SEARCH WARRANT EXECUTED FOR A UPS PARCEL PACKAGE; and** §<br> §<br>**APPROXIMATLEY $25,000 IN CASH SEIZED FROM A FEDEX PACKAGE; and** §<br> §<br>**APPROXIMATLEY $18,673.56 IN FUNDS FORMERLY ON DEPOSIT IN BBVA BANK ACCOUNT NUMBER 6797830478 HELD IN THE NAME OF BOBBIE G. WHOOPER; and** §<br> §<br>**APPROXIMATLEY $9,916.47 IN FUNDS FORMERLY ON DEPOSIT IN JPMC BANK ACCOUNT NUMBER 755691570 HELD IN THE NAME OF BOBBIE G. WHOOPER;** §<br> §<br>RESPONDENTS. § | **CIVIL ACTION NO. EP-22-CV-151** |

## VERIFIED COMPLAINT FOR FORFEITURE

Comes now Petitioner United States of America, acting by and through the United States Attorney for the Western District of Texas and the undersigned Assistant United States Attorney, pursuant to Rule G, Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture

1

Actions, Federal Rules of Civil Procedure, and respectfully states as follows:

## I.
## NATURE OF THE ACTION

This action is brought by the United States of America seeking forfeiture to the United States of the properties described below:

1. **Approximately $25,000 in cash seized from a search warrant executed for a UPS parcel package; and**

2. **Approximately $15,000 in cash seized from a search warrant executed for a UPS parcel package; and**

3. **Approximately $25,000 in cash seized from a FedEx package; and**

4. **Approximately $18,673.56 in funds formerly on deposit in BBVA Bank account number 6797830478 held in the name of Bobbie G. Whooper; and**

5. **Approximately $9,916.47 in funds formerly on deposit in JPMC Bank account number 755691570 held in the name of Bobbie G. Whooper,**

collectively referred to as the "Respondent Properties."[1]

## II.
## STATUTORY BASIS FOR FORFEITURE

This is a civil forfeiture action *in rem* brought against the Respondent Properties for the violation of Title 18 U.S.C. § 1343, and subject to forfeiture to the United States pursuant to Title 18 U.S.C. § 981(a)(1)(C).

**Title 18 U.S.C. § 981.  Civil forfeiture**
   **(a)(1)** The following property is subject to forfeiture to the United States:
       * * *
   **(C)** Any property, real or personal, which constitutes or is derived from proceeds traceable to a violation . . . of this title or any offense constituting "specified unlawful activity" (as defined in section 1956(c)(7) of this title), or conspiracy to

---

[1] The Respondent Properties was initially seized by the Drug Enforcement Administration (DEA) based on an investigation of violations Title 21 U.S.C. § 846 (Conspiracy to distribute controlled substances), Title 18 U.S.C. § 1956 (Money Laundering), and Title 18 U.S.C. § 1960 (Unlicensed Money Remitter). Subsequently, when the DEA investigation determined that the Respondent Properties was involved in violations of Title 18 U.S.C. § 1343 (Wire Fraud), the investigation was turned over to the Federal Bureau of Investigation.

commit such offense.

## III.
## JURISDICTION AND VENUE

Under Title 28 U.S.C. § 1345, this Court has jurisdiction over an action commenced by the United States, and under Title 28 U.S.C. § 1355(a), jurisdiction over an action for forfeiture. This Court has *in rem* jurisdiction over the Respondent Properties under Title 28 U.S.C. §§ 1355(b) and 1395(b).  Venue is proper in this District pursuant to Title 28 U.S.C. § 1355(b)(1)(A), because the acts or omissions giving rise to the forfeiture occurred in this District, and pursuant to Title 28 U.S.C. §§ 1355(b)(1)(B) and 1395(b) because the Respondent Properties were seized in this District.

## IV.
## FACTS IN SUPPORT OF FORFEITURE

**Initial Investigation**

During September and October 2021, DEA made the follow seizures:

| Seizure | Amount | Date | Location |
|---|---|---|---|
| 1 | $25,000.00 | 9/16/2021 | El Paso (UPS parcel package) |
| 2 | $15,000.00 | 9/24/2021 | El Paso (UPS parcel package) |
| 3 | $25,000.00 | 9/21/2021 | Palm Beach (FedEx Package) |
| 4 | $18,673.56 | 10/15/2021 | BBVA Account 6797830478 seizure warrant |
| 5 | $9,916.47 | 10/18/2021 | JPMC Account 755691570 seizure warrant |

**Seizure Number One Summary:**

On September 15, 2021, El Paso PD Detective T. Ibarra #2868, assigned to the Source City Metro Narcotics Task Force, applied for a search warrant for a UPS parcel package which was sent by Bobbie JOHNSON, also known as "Bobby Whooper" (JOHNSON).  Det. Ibarra obtained search warrant #JMAG21-10931 which was signed by Judge H. Acosta, Criminal Law Magistrate.

At approximately 10:30 p.m. on that same date, Officer Vargas and Det. Ibarra executed the search warrant and the parcel was opened and witnessed by El Paso Police Department (EPPD) Source City Metro Narcotics Task Force Sgt. L. Picard #2341. The parcel contained a pair of gray athletic shorts with three white Chase Bank money envelopes in the short's pockets. Each of the money envelopes contained a quantity of U.S Currency. DEA and/or EPPD seized $25,000 in United States Currency (USC) from the package.

On September 16, 2021, at approximately 10:30 a.m. DEA Task Force Officer (TFO) Javier Loya and Special Agent (SA) Stephanie Nuno were contacted by the EPPD Narcotics Unit requesting assistance with a possible money laundering case.

**Seizure Number Two Summary:**

On September 23, 2021, Officers with the EPPD Source City Metro Narcotics Task Force were conducting surveillance on JOHNSON. JOHNSON was observed leaving her residence and walking to a UPS Store in El Paso, Texas. After JOHNSON left the UPS store, DEA and/or EPPD entered the UPS Store and met with the business employees. DEA Special Agent (SA) Stephanie Nuno obtained a search warrant (EP: 21-M-2094-MAT) for one brown box with UPS Next Day Air Label with tracking number 1Z8W5000104243317 which was signed by United Stated Magistrate Judge Miguel A. Torres on that same date. The UPS box was believed to have United States Currency inside and was shipped by JOHNSON. Pursuant to a search warrant, the package was searched, and $15,000 USC was seized.

**Seizure Number Three Summary:**

On September 20, 2021, EPPD K9 Officer S. Vargas was notified that JOHNSON had sent a FedEx package using a different sender name of "Jessica JOHNSON" to Boynton Beach, Florida. Officer Vargas contacted West Palm Beach Police Department HIDTA Task Force Sgt.

4

Tony Combs and advised him of the package. On September 21, 2021, the FedEx parcel package which contained $25,000 USC was seized by DEA TFO Michael Loney.

**Seizure Number Four Summary:**

On October 15, 2021, DEA seized $18,673.56 from a BBVA Bank account belonging to JOHNSON in El Paso, TX, pursuant to a U.S. Federal Seizure Warrant signed by Judge Leon Schydlower.

**Seizure Number Five Summary:**

On October 18, 2021, DEA seized $9,916.47 from a JPMorgan Chase Bank account belonging to JOHNSON in El Paso, TX, pursuant to a U.S. Federal Seizure Warrant signed by Judge Leon Schydlower.

**DEA interview of JOHNSON:**

On September 16, 2021, at approximately 6:30 p.m., DEA TFO Javier Loya, SA Nuno, Det. Ibarra, and Officer Vargas arrived at the residence of Bobbie JOHNSON, also known as "Bobby Whooper" (JOHNSON). Det. Ibarra and SA Nuno contacted JOHNSON at the front door. Det. Ibarra advised JOHNSON of the purpose for the visit. JOHNSON was asked if she had mailed out a UPS package containing U.S. Currency, to which she stated she did. Det. Ibarra asked JOHNSON who the package was going to, and JOHNSON stated to "Michael BROWN" and that "Michael BROWN" was an agent. When asked to explain, JOHNSON stated she had won a sweepstakes approximately four years ago and won $1.5 million U.S. dollars, and that she was shipping the money to pay "taxes" on her winnings. JOHNSON stated she had never met "Michael BROWN," but she believed he was an agent because that is what she was told over the phone.

Det. Ibarra and SA Nuno advised JOHNSON that she was shipping money to an apartment complex and not an actual government agency, to which JOHNSON replied that she knew it was going to an apartment. When asked by SA Nuno, JOHNSON stated the name of the sweepstakes company that she won from was called Publishers Clearinghouse. SA Nuno asked JOHNSON where she had won those sweepstakes and JOHNSON stated that she had won the sweepstakes playing the slot machines in Las Vegas, Nevada. SA Nuno asked JOHNSON why if she had won sweepstakes over four years ago would she be paying taxes on that money four years later, and JOHNSON replied that she had been paying taxes, but in smaller amounts. JOHNSON did not provide the amounts she said she had paid for taxes since she claimed she won sweepstakes. SA Nuno asked JOHNSON if she had ever actually met with BROWN in person and JOHNSON stated she had not. SA Nuno asked JOHNSON if she had a phone number or contact information for BROWN or how she communicated with him. JOHNSON stated that BROWN would communicate with JOHNSON telephonically. SA Nuno asked JOHNSON if she could provide BROWN's information. JOHNSON replied that the information was on her cell phone and that her phone was not charged. SA Nuno then re-iterated to JOHNSON the importance of sharing information regarding BROWN since they were trying to determine if JOHNSON was involved with some sort of fraud. JOHNSON then obliged and went inside her residence to retrieve her cell phone. As Det. Ibarra and SA Nuno waited for JOHNSON, Yolanda THOMAS (THOMAS), later identified as JOHNSON's daughter, walked out of the residence.

TFO Javier Loya met with THOMAS who advised that she was the daughter of JOHNSON and resided at the residence with her. TFO Loya explained that a UPS parcel package had been intercepted containing $25,000 USC that her mother Bobbie JOHNSON was

attempting to ship.  THOMAS advised TFO Loya that her mother did not have money to pay for her bills but that she does not get involved with her mother's business.  TFO Loya asked THOMAS if her mother (JOHNSON) had recently won any money, and THOMAS replied, "that's just what they tell her, she did not actually win money."  TFO Loya asked THOMAS who was telling JOHNSON about the winnings, and THOMAS stated, "she did not know, whoever calls her mother's phone throughout the day and night."  TFO Loya explained that her mother (JOHNSON) had withdrawn over $200,000 USC in less than a month, however THOMAS did not seem concerned about it.

      JOHNSON then returned to the door of her residence, and TFO Loya asked her if she had received any of the sweepstakes winnings, and she replied she had not.  SA Nuno asked JOHNSON who had returned with her phone, if she could provide the phone number BROWN was using to communicate with JOHNSON.  JOHNSON then opened her phone and appeared to be looking for the phone number.  After looking for some time, JOHNSON stated that she could not see the phone number on her phone.  SA Nuno offered to help JOHNSON read the numbers off the phone if she couldn't.  JOHNSON then showed SA Nuno a text communication between her and "Michael CARTER."  SA Nuno could see that there was a secondary address on her text thread with BROWN and she asked JOHNSON who that person was.  JOHNSON stated that the name was someone else that she had shipped money to.  SA Nuno asked if she could see the message which read, "Rachel Jackson" (JACKSON) and JACKSON's address.  SA Nuno asked JOHNSON if she knew who JACKSON was, and JOHNSON stated she did not know. JOHNSON then pulled her phone away and appeared to be very protective of what was on her communications with BROWN.  TFO Loya and SA Nuno asked her how much money she had in her account, and JOHNSON replied, "about $27,000.00" SA Nuno asked JOHNSON how

much she had in her Wells Fargo and Chase accounts combined before August 2021, and she stated she had about $138,000.00. TFO Loya and SA Nuno asked JOHNSON where all of her money was coming from, and JOHNSON advised that she had "sponsors" which "Michael BROWN" found for her to help her pay the taxes on her winnings. TFO Loya and SA Nuno asked JOHNSON if she knew who was depositing the money into her accounts, to which she replied "no." JOHNSON advised that "sponsors" were depositing money into her account and "Michael BROWN" would then call her and tell her how much money to withdraw, how to package the money and where to send the money. TFO Loya and SA Nuno asked JOHNSON if the money belonged to her, and she replied "no." SA Nuno asked JOHNSON which financial institutions she banked with, and JOHNSON stated that she banked at Wells Fargo Bank and Chase. SA Nuno asked JOHNSON if she had any statements from her financial institutions that showed where the source of funds from "sponsors" was coming from, and JOHNSON stated she did not. SA Nuno asked JOHNSON if she had filed taxes, and JOHNSON replied that she had not filed taxes in over four or five years because she does not work or make any money. SA Nuno asked JOHNSON if she had any proof of the receipts for the money shipments she was sending BROWN, and JOHNSON stated she did. JOHNSON then retrieved a receipt which showed a parcel sent to Michael BROWN. SA Nuno attempted to see the receipt through the gate which had a mesh wire but could not see the receipt details clearly. Det. Ibarra then asked JOHNSON if BROWN provided her with a phone for her to be in contact with him, and JOHNSON said "no." SA Nuno then advised JOHNSON not to ship any more packages containing currency because it might be a possible money scam. SA Nuno asked JOHNSON if she could obtain her bank statements for the months of August and September 2021, so that law enforcement officers could review the source of the funds deposited into her on her account, and

8

then tell her who was depositing money since she did not know who it was, and JOHNSON stated "okay." SA Nuno explained to JOHNSON that officers would return the following week to speak with her.

**FBI Bank Record Review and Interview:**

FBI conducted a review of three of JOHNSON's bank accounts as follows:

1. Bank of America bank account number ending in xx6585 in the name of Bobbie G. Whooper. The table below shows an analysis starting on August 9, 2021, which was the date the first check was deposited into the account from Linda SCOTT (SCOTT). The account balance on August 9, 2021, prior to SCOTT's check being deposited was approximately $150.45.

| Bank of America Bank Account xx6585 ||||||
|---|---|---|---|---|
| Date | Description | Inflows | Ouflows | Balance |
| 8/9/2021 | Beginning balance of Bank of America acct xx6585 as of 08/09/21 | | | $ 150.45 |
| 8/9/2021 | Deposit check #155 from Linda M Scott | $ 32,500.00 | | $ 32,650.45 |
| 8/9/2021 | Claims processing transaction | $ 12.00 | | $ 32,662.45 |
| | Cash withdrawals from 08/09 - 08/18/21 | | $ (15,100.00) | $ 17,562.45 |
| | Net spending on account from 08/09 - 08/20/21 | | $ (119.18) | $ 17,443.27 |
| 8/23/2021 | Account closure cashier's check from BoA account xx6585 | | $ (17,443.27) | $ - |
| | Total | $ 32,512.00 | $ (32,662.45) | |

2. BBVA bank account number ending in xx0478 in the name of Bobbie G. Whooper. The table below shows an analysis starting August 23, 2021, which was the date the account was opened.

9

| BBVA Bank Account xx0478- Account Opened 8/23/2021 ||||||
| Date | Description | Inflows | Outflows | Balance |
|---|---|---|---|---|
| 8/23/2021 | Deposit check #137 from Linda M Scott to BBVA acct xx0478 | $ 46,400.00 | | $ 46,400.00 |
| 9/9/2021 | Deposit cashier's check from BoA acct 6585 to BBVA acct xx0478 | $ 17,443.27 | | $ 63,843.27 |
| | Withdrawals from 08/30 - 09/13/21 | | $ (44,453.27) | $ 19,390.00 |
| | Net spending on account from 09/09 - 10/01/21 | | $ (716.44) | $ 18,673.56 |
| 10/15/2021 | Cashier's check issued to satisfy DEA warrant | | $ (18,673.56) | $ - |
| | Total | $ 63,843.27 | $ (63,843.27) | |

3. JPMC bank account number ending in xx1570 in the name of Bobbie G. Whooper. The table below shows an analysis starting July 17, 2021, which was the date the account was opened.

| JPMC Bank Account xx1570- Account Opened 7/17/2021 |||||
|---|---|---|---|---|
| Date | Description | Inflows | Outflows | Balance |
| 8/13/2021 | Deposit check #132 from Linda M Scott | $325,000.00 | | $325,000.00 |
| | Cash Deposit from 07/19-10/13/21 | $ 850.00 | | $325,850.00 |
| | Cash Withdrawals from 07/19-10/13/21 | | $ (290,700.00) | $325,850.00 |
| | Cashier's check to Davea Brown | | $ (12,000.00) | $325,850.00 |
| | Zelle payments to Merkel Schloss from 07/19-10/13/21 | | $ (8,770.00) | $325,850.00 |
| | Zelle payments to Akeem Loss from 07/19-10/13/21 | | $ (2,870.00) | $325,850.00 |
| | Net miscellaneous spending from 07/19-10/13/21 | | $ (1,593.53) | $325,850.00 |
| | DEA seizure | | $ (9,916.47) | $325,850.00 |
| | Total | $325,850.00 | $ (325,850.00) | |

As explained in the tables above, the summary below is a list of the checks from SCOTT that were deposited into JOHNSON's accounts:

| Date | Description | Amount |
|---|---|---|
| 8/9/2021 | Deposit check #155 from Linda M Scott to BoA acct xx6585 | $ 32,500.00 |
| 8/13/2021 | Deposit check #132 from Linda M Scott JPMC acct xx1570 | $325,000.00 |
| 8/23/2021 | Deposit check #137 from Linda M Scott to BBVA acct xx0478 | $ 46,400.00 |
| | Total | $403,900.00 |

Additionally, the three DEA cash seizures of $25,000, $15,000, and $25,000, all occurred during September 2021. A review of the bank accounts noted above show cash withdrawals

from JOHNSON's bank accounts for the same and/or similar amounts shortly before cash seizures by DEA.

**FBI Interview of SCOTT:**

On April 23, 2022, FBI SA Samuel Waldron interviewed SCOTT via telephone. SCOTT said sometime during 2021 she received a phone call from an unknown individual (FNU LNU) telling her she had won five million dollars and a new car. In order to get the car and money, SCOTT had to first pay taxes.

SCOTT was shown three checks: check number 132 for $325,000, check number 137 for $46,400, and check number 155 for $32,500. All checks were written to "Bobbie Whooper" in August 2021. SCOTT stated that she was told by FNU LNU to send the checks to Bobbie Whooper in order to pay the taxes so she could win the money and the car.

### Summary

Based on the above information and the evidence described herein, there is probable cause to believe the Respondent Properties originally seized by DEA are illicit funds from a wire fraud scheme deposited into and withdrawn from bank accounts in JOHNSON's name.

### V.
### PRAYER

WHEREFORE, Petitioner, United States of America, prays that due process issue to enforce the forfeiture of the contents in Respondent Properties, that due notice, pursuant to Rule G(4), be given to all interested parties to appear and show cause why forfeiture should not be decreed,[2] that a warrant for an arrest in rem be ordered, that the contents in Respondent

---

[2] Appendix A, Notice of Complaint of Forfeiture, which is being filed along with this complaint, will be sent to those known to the United States to have an interest in the Respondent Properties.

Properties be forfeited to the United States of America, that the contents in Respondent Properties be disposed of in accordance with the law, and for any such further relief as this Honorable Court deems just and proper.

                Respectfully submitted,

                ASHLEY C. HOFF
                United States Attorney for the
                Western District of Texas

By: _____
        Kristal M. Wade
        Assistant United States Attorney
        New Mexico Bar No. 8204
        700 E. San Antonio Ave., Suite 200
        El Paso, Texas 79901
        Tel: (915) 534-6884
        Fax: (915) 534-3461

## **VERIFICATION**

Special Agent, Samuel Waldron, declares and says that:

I am a Special Agent with Federal Bureau of Investigations, assigned to the El Paso Field Office, and I am the investigator responsible for the accuracy of the information provided in this complaint.

I have read the above Verified Complaint for Forfeiture and know the contents thereof based upon my personal participation in the investigation, my conversations with others, and my review of documents and other evidence. Based upon information and belief, the allegations contained in the Verified Complaint for Forfeiture are true and correct. Because the Verified Complaint is being submitted for the limited purpose of stating sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial, it does not contain every fact known by me or the United States. Where the actions, conversations, and statements of others are related therein, they are related in substance and in part, unless otherwise stated.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed on this the 29th day of April, 2022.

Special Agent Samuel Waldron
Federal Bureau of Investigations

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** § § | |
| PETITIONER, § § | |
| v. § § | |
| **APPROXIMATLEY $25,000 IN CASH SEIZED FROM A SEARCH WARRANT EXECUTED FOR A UPS PARCEL PACKAGE; and** § § § § § § | **CIVIL ACTION NO.  EP-22-CV-151** |
| **APPROXIMATLEY $15,000 IN CASH SEIZED FROM A SEARCH WARRANT EXECUTED FOR A UPS PARCEL PACKAGE; and** § § § § § | |
| **APPROXIMATLEY $25,000 IN CASH SEIZED FROM A FEDEX PACKAGE; and** § § § § | |
| **APPROXIMATLEY $18,673.56 IN FUNDS FORMERLY ON DEPOSIT IN BBVA BANK ACCOUNT NUMBER 6797830478 HELD IN THE NAME OF BOBBIE G WHOOPER; and** § § § § § § § | |
| **APPROXIMATLEY $9,916.47 IN FUNDS FORMERLY ON DEPOSIT IN JPMC BANK ACCOUNT NUMBER 755691570 HELD IN THE NAME OF BOBBIE G WHOOPER;** § § § § § § § | |
| RESPONDENTS. § § | |

**NOTICE OF COMPLAINT FOR FORFEITURE**

On April 29, 2022, the United States of America, by and through its United States Attorney for the Western District of Texas and the undersigned Assistant United States Attorney, filed a Verified Complaint for Forfeiture against the properties described below, which is also

specifically described in the Verified Complaint for Forfeiture, and which is subject to forfeiture to the United States pursuant to Title 18 U.S.C. § 981(a)(1)(C), as properties involved in violation of Title 18 U.S.C. § 1343, namely:

1. **Approximately $25,000 in cash seized from a search warrant executed for a UPS parcel package; and**

2. **Approximately $15,000 in cash seized from a search warrant executed for a UPS parcel package; and**

3. **Approximately $25,000 in cash seized from a FedEx package; and**

4. **Approximately $18,673.56 in funds formerly on deposit in BBVA Bank account number 6797830478 held in the name of Bobbie G Whooper; and**

5. **Approximately $9,916.47 in funds formerly on deposit in JPMC Bank account number 755691570 held in the name of Bobbie G Whooper,**

hereinafter referred to as the "Respondent Properties."

Pursuant to Rule G(4)(b) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, notice to any person who reasonably appears to be a potential claimant shall be by direct notice. Accompanying this notice is the Verified Complaint for Forfeiture which has been filed in this cause and which describes the Respondent Properties. Pursuant to Supplemental Rule G(4)(b), any person claiming an interest in the Respondent Properties who has received direct notice of this forfeiture action must file a Claim in compliance with Rule G(5)(a), with the court within **thirty-five (35) days after the notice was sent, if delivered by mail (if mailed, the date sent is provided below), or within 35 days of the date of delivery, if notice was personally served**. An Answer or motion under Rule 12 of the Federal Rules of Civil Procedure must then be filed within **twenty-one (21)** days of the Claim being filed. The Claim and Answer must be filed with the Clerk of the Court, 525 Magoffin, Suite 105, El Paso, Texas 79901, and copies of each must be served upon Assistant United States Attorney Kristal M. Wade, 700 E. San Antonio Ave, Suite 200, El Paso, Texas

79901, or default and forfeiture will be ordered. *See* Title 18 U.S.C. § 983(a)(4)(A) and Rule G(5) of the Supplemental Rules for Admiralty or Maritime Claim and Asset Forfeiture Actions.

Failure to follow the requirements set forth above will result in a judgment by default taken against you for the relief demanded in the complaint.

**DATE NOTICE SENT:** _____

ASHLEY C. HOFF
United States Attorney
for the Western District of Texas

By: *Kristal M. Wade*
Kristal M. Wade
Assistant United States Attorney
New Mexico Bar No. 8204
700 E. San Antonio Ave., Suite 200
El Paso, TX 79901
Tel: 915-534-6884
Fax: 915-534-3461

3